IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:25-cv-100-D-BM

JACOB HALTERMAN, individually and on behalf of similarly situated persons,

Plaintiff,

v.

THE RENFROW GROUP, LLC,

Defendant.

**PLAINTIFF'S UNOPPOSED MOTION TO FACILITATE NOTICE OF FLSA SETTLEMENT AND FOR APPROVAL OF FLSA SETTLEMENT**

Plaintiff Jacob Halterman ("Named Plaintiff") files this memorandum of law in support of Plaintiff's Consent Motion to Facilitate Notice of FLSA Settlement and for Approval of FLSA Settlement ("Motion"). By and through the Motion, Plaintiff requests the Court: (1) in the exercise of its discretion, order that notice of the settlement be provided to all Security Guards, as described below; (2) approve the Proposed Notice of Settlement of Collective Action Lawsuit ("Notice"); (3) approve the proposed Consent Form; (4) authorize leave for a third-party administrator to send all Security Guards the Court's approved Notice, Consent Form, and a postage paid return envelope; and (5) approve the terms of the Agreement (together "Approval Order").

I.  **INTRODUCTION**

This is a case in which the Plaintiffs allege Defendant The Renfrow Group, LLC ("Defendant") failed to pay them and other similarly situated non-exempt Security Guards for all hours worked. On or about February 20, 2025, Plaintiffs filed their Collective and Class Action Complaint in the U.S. District Court for the Eastern District of North Carolina alleging

that Defendant violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and North Carolina state law (the "Litigation"). [ECF No. 1]. In conjunction with the Parties' initial conference held pursuant to Rule 26, the Parties agreed to participate in a private mediation process in an attempt to resolve Plaintiffs' claims on a collective basis. Prior to the mediation, the Parties exchanged information, including payroll data for approximately 200 current and former Security Guards. Based on this information, the Parties prepared their respective damages analyses. After considerable negotiations, the Parties were able to reach an FLSA collective action settlement of this matter. The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (attached as Exhibit 1). A copy of the Notice and Consent Form are attached as Exhibits A and B to the Agreement, respectively. The Parties have negotiated an Agreement on behalf of an FLSA collective class of Security Guards defined as: all current and former non-exempt Security Guards who worked for Defendant during the period February 20, 2022 through August 12, 2025.

The Agreement allows Security Guards to participate in the settlement on an opt-in basis pursuant to the collective action procedure of the FLSA. For purposes of the Agreement, the Parties have agreed that Plaintiffs and Security Guards are similarly situated within the meaning of the FLSA. The maximum total amount of the settlement is $160,000.00 (the "Maximum Settlement Amount."). Security Guards who submit valid Consent Forms, will receive a Settlement Check that provides compensation for alleged uncompensated work performed while employed by Defendant. In exchange, the settlement contains a release of all state and federal wage and hour law claims against Defendant that were or could have been asserted in the Litigation, including but not limited to claims for unpaid wages, overtime and minimum wage

compensation, and liquidated or other damages. Security Guards who choose not to submit a Consent Form will not receive their proportional share of the Net Settlement Fund and will not release any wage and hour claims against Defendant. Any unclaimed funds will ultimately be retained by Defendant. This Settlement is informed by prior related settlements that have been approved by courts, the result of experienced Counsel working together to achieve an efficient resolution, and in the further interest of judicial economy. The Court should grant this Motion.

## II. LEGAL BASIS FOR FLSA SECTION 216(b) NOTICE

Plaintiffs seek this Court's approval to send the proposed Notice and Consent Form to all Security Guards who worked for Defendant from February 20, 2022 through August 12, 2025. The proposed Notice and Consent Form are attached to the Agreement as Exhibits A and B, respectively.

### A. The District Court is Authorized to Issue Notice of the Agreement.

The collective action provision of the FLSA allows for one or more employees to bring an action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S.165, 170 (1989). To serve the "broad remedial purpose" of the FLSA, courts are afforded the power to authorize notice to other potential class members of their rights to "opt-in" to a pending collective action. Id. These early notices, authorized by the court, are helpful to protect against misleading communications by the parties, resolve disputes regarding the content of any notice, prevent the proliferation of multiple individual lawsuits, assure that the joinder of additional parties is accomplished properly and efficiently, and to expedite resolution of the dispute. *Id*. at 170-172. Here, the Order sought by the Parties' Consent Motion furthers these remedial goals.

B.  Plaintiffs and the Security Guards Are Similarly Situated

For purposes of the Agreement, the Parties have agreed that Plaintiffs and the Security Guards are similarly situated in accordance with the requirements of the FLSA. A finding by the Court that Plaintiffs and Security Guards are similarly situated is supported by the following facts: (1) Plaintiffs and Security Guards were employed by Defendant; (2) Plaintiffs and Security Guards performed the same or materially the same job duties; (3) Plaintiffs and Security Guards were paid based on an hourly rate, admittedly non-exempt basis, and were thus entitled to be compensated according to each hour worked. Accordingly, Plaintiffs and Security Guards performed similar job duties and were subject to the same wage and hour policy and practice challenged as unlawful in the Litigation. Under these facts, the Court should find that Plaintiffs and the Security Guards are similarly situated for purposes of this FLSA collective action settlement.

C.  The Proposed Notice and Consent Form Provides Adequate Notice.

The proposed Notice attached to the Agreement as Exhibit A is clear and straightforward. It was drafted jointly by counsel for the Parties. The proposed Notice also informs Security Guards of the formula to be used to calculate individual settlement amounts and provides the estimated settlement amount to each Security Guard. The proposed Consent Form provides Plaintiff Counsel with personal contact information for the Security Guards and a consent to join this action as an opt-in plaintiff under the FLSA. The proposed Notice and Consent Form are neutral and comply with the standards of fairness required for a notice to be disseminated under authority of the Court. Accordingly, the Court should approve both documents and authorize notice to the Security Guards pursuant to the terms of the Agreement.

D.  Notice to Security Guards

The Agreement provides what Plaintiffs believe is a fair and practical procedure for notifying Security Guards of the Settlement. Within twenty (20) days after receiving the contact information for the Security Guards, the Settlement Claims Administrator will send Security Guards the Notice and Consent Form by first-class mail and email. [Agreement, ¶ 2.4(B)]. To provide the best notice practicable, the Settlement Claims Administrator is authorized to take reasonable efforts to obtain forwarding addresses after the initial mailing and will resend the Notice to those forwarding addresses. [Agreement, ¶ 2.4(C)]. The Settlement Claims Administrator will send a reminder notice to each Security Guard who does not return a valid Consent Form within thirty-five (35) days of the Notice first being mailed. [Agreement, ¶ 2.4(D)]. Security Guards will have 50 days to submit a Consent Form to the Settlement Claims Administrator or object to the Agreement. [Agreement, ¶ 2.5(A)].

**III.  THE TERMS OF THE AGREEMENT**

The Agreement provides that the Collective Members include "the Named Plaintiffs and all persons who timely file a valid Consent Form in accordance with the Agreement." [Agreement, ¶ 1.5]. There are approximately 200 Security Guards who worked for Defendant during the Collective Period. Each Security Guard for whom Defendant's records show worked for Defendant in North Carolina from February 20, 2022 through August 12, 2025 will be eligible to participate in the settlement. Each Security Guard will be fully advised of this settlement with the Notice that is attached to the Agreement as Exhibit A and the Consent Form that is attached to the Agreement as Exhibit B.

Pursuant to the Agreement, the Maximum Settlement Amount is $160,000.00. Of this amount, the cost of a third-party Settlement Claims Administrator, not to exceed $4,000.00, will

be paid out of the Maximum Settlement Amount. In addition, in recognition of the work involved and the benefit achieved by the Named Plaintiff, Plaintiffs seek Participation Payments in the amount of $4,000.00 to Halterman. Finally, Plaintiffs' Counsel seeks an amount not to exceed 33.3% of the Maximum Settlement Amount as attorneys' fees and any amount for advanced litigation expenses and costs. *See* Agreement, ¶ 3.2. Each of these items fit within the range frequently approved by courts that informed this Settlement. *See e.g.*, *Marnoch v. GBR Pizza, Inc. et al.*, Case No. 5:19-cv-00257-D (E.D. N.C.) (approving a service award to the named plaintiff of up to $5,000.00, a similar claims-made structure); *see also*, *Chenkus v. Prairie Pizza, Inc. dba Domino's*, 3:17-cv-00723 (W.D. NC) (similarly approving claims made structure, service award of $5,000, and approving of attorneys' fees request of up to 33.3% of the total fund).

The remaining funds of the Maximum Settlement Amount, after subtraction of the Settlement Administrator fees and costs, Court-approved incentive payments, and Court-approved attorney's fees and costs for Plaintiffs' counsel (hereinafter the "Net Settlement Fund") will be utilized to pay Collective Members (i.e. putative collective action members who have timely filed the Consent Form), based on the number of weeks worked during Collective Period. Collective Members will be allocated a proportional share of the Net Settlement Fund based on the total weeks worked by each Collective Member. Specifically, the total number of weeks worked by all Security Guards during the Collective Period will be calculated pursuant to Defendant's business records to obtain the "Total Denominator." [Agreement, ¶ 3.4(B)]. The total number of weeks worked by each security guard will be divided by the Total Denominator to determine each Collective Member's "Portion of the Net Settlement Fund." Collective Members will receive their proportional share of the Net Settlement Fund. Security Guards who choose not

to submit a Claim Form will not receive their proportional share of the Net Settlement Fund and will not release any wage and hour claims against Defendant. Any unclaimed funds and un-negotiated settlement checks to Collective Members that remain uncashed two hundred (200) days after the date of mailing shall belong to and be retained by Defendant. [Agreement, ¶ 3.6(I)].

A. <u>Release of Claims</u>

In exchange for Settlement Checks, Collective Members agree to the following:

> Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Collective Member who has timely submitted a valid Consent Form, shall, on behalf of himself or herself and his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully and finally release, remise, and finally and forever discharge the Released Parties from all wage and hour claims of any type, including all claims arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*), the wage and hour laws of the State of North Carolina (including but not limited to the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 *et seq.)*, all local laws, and all claims asserted in the Litigation ("Released Claims"). The Released Claims include all claims for unpaid regular or overtime wages, claims under any wage and hour and wage payment law claims (including statutory claims), all derivative benefit claims (both ERISA and non-ERISA benefits, including 40l(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) arising under any state or local wage and hour law or regulation, interest on such claims, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind of nature whatsoever related to such claims from the date of the earliest statute of limitations applicable to the claims of any Collective Member through the date of the entry of the Approval Order.

Only Security Guards who submit timely Consent Forms will release the above-listed claims against Defendants. Security Guards who do not submit timely Consent Forms do not release any wage and hour claims and are unaffected by the settlement of this action.

B.   <u>Attorneys' Fees and Costs</u>

Pursuant to the Agreement, Collective Counsel's attorneys' fees shall not exceed one-third (1/3) of the Maximum Settlement Amount and will compensate Collective Counsel for all work performed in this lawsuit as well as all of the work remaining to be performed, including, but not limited to securing Court approval of the Agreement, making sure that the settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. [Agreement, ¶3.2]. In addition, the Agreement provides that Collective Counsel shall receive reimbursement of their out-of- pocket costs and expenses approved by the Court. [Agreement, ¶ 3.2(A)].

Pursuant to the Agreement, Collective Counsel will not seek approval of a fee award and out-of-pocket cost reimbursement until such time as the Parties seek final approval of the Agreement and dismissal of this action. [Agreement, ¶ 3.2(A)].

C.   <u>The Court Should Approve the Agreement</u>

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Latham v. Branch Banking and Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to potential recovery. *Lomascolo v. Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). As a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately

the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009).

### 1. The Parties Have a *Bona Fide* Dispute

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo*, 2009 WL 3094955, at *16 (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, Plaintiffs allege that Defendant failed to pay the Collective Members for all hours worked. Defendant denies this allegation and maintains that it properly paid Plaintiffs under the FLSA. After evaluating the evidence, it is clear that significant factual and legal questions remain with respect to liability and damages under Plaintiffs' theory of the case. Accordingly, the Court should decide that a bona fide dispute exists between the parties.

### 2. The Settlement is Reasonable, Adequate, and Fair

The Settlement was negotiated at arm's length by experience counsel concerning *bona fide* disputes between their clients with respect to liability and amounts due, assuming FLSA violations had occurred. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also, e.g., Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014) ("Here, the amount provided in [the settlement] is fair and reasonable in light of the particular circumstances of the case, including Duprey's recognition of the strong defenses asserted by Scotts, as explained above.").

The Maximum Settlement Amount only obtained after the Parties engaged in a structured ADR process reflects 1) the fact that Defendant would have vigorously contested the merits of Plaintiffs' FLSA claims; and 2) that Defendant contends the shorter two-year statute of limitations for non-willful violations of the FLSA would have been appropriate, which would significantly reduce – or eliminate – many Class Member's possible recovery, in large part because many eligible security guards worked only during the third year. As further demonstrated in Plaintiff's Counsel's Declaration, the Agreement is reasonable, adequate, and fair; in the interest of judicial economy; and should be granted.

IV. **CONCLUSION**

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Consent Motion to Facilitate Notice of Fair Labor Standards Act Settlement and for Final Approval of Fair Labor Standards Act Settlement and enter the accompanying proposed Order.

*/s/ Jacob J. Modla*
Jacob J. Modla
**CROMER BABB & PORTER, LLC**
P.O. Box 11675
Columbia, SC 29211
(803) 799-9530
jake@cromerbabb.com

Colby Qualls
**FORESTER HAYNIE PLLC**
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Phone: 214-210-2100
cqualls@foresterhaynie.com

*(Special Appearance Pending)*

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defense counsel and, pursuant to the terms of the Parties' Settlement Agreement, was advised that Defendants do not oppose the relief requested herein.

*/s/ Colby Qualls*
Colby Qualls, Esq.

## CERTIFICATE OF SERVICE

This is to certify that, the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

*/s/ Jacob J. Modla*
Jacob J. Modla, Esq.